**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

| | |
|---|---|
| **HANSEN REYNOLDS LLC**, <br><br>                Plaintiff, <br><br> v. <br><br> **BRIAN R. BLAZER**, <br><br>                Defendant. | Civil Action No. _____ |

## COMPLAINT

Plaintiff Hansen Reynolds LLC ("Hansen Reynolds"), by and through its undersigned counsel, Hansen Reynolds LLC, for its complaint against Defendant Brian Blazer ("Blazer") alleges as follows:

### INTRODUCTION

1.     This is an action for injunctive and monetary relief by Hansen Reynolds against Blazer for breach of contract in violation of Wisconsin law.

2.     Blazer and Hansen Reynolds entered into an agreement on or about June 26, 2021. According to the express terms of this agreement, Hansen Reynolds agreed to represent Blazer in two specific lawsuits, then pending in Wisconsin and Alabama. In exchange, Blazer agreed to timely pay Hansen Reynolds for all attorneys' fees, other professional fees, and costs incurred by attorneys and employees of Hansen Reynolds in connection with its representation of Blazer in those cases.

1

3.     Although Hansen Reynolds performed under this agreement, meeting all of its duties and obligations in support of its representation of Blazer in the lawsuits, Blazer failed to comply with the terms of the parties' agreement because he did not pay the amounts owed by him to Hansen Reynolds in accordance with the terms of the agreement.

4.     Blazer's failure to comply with his payment obligations under the parties' agreement resulted in a severe and unreasonable financial burden on Hansen Reynolds and on the Hansen Reynolds attorneys representing Blazer in these lawsuits.

5.     Despite Blazer not paying Hansen Reynolds for months at a time, including a stretch of more than 5-months during briefing summary judgment in one case and settlement negotiations in another, Hansen Reynolds continued to meet its duties and obligations to Blazer. By the time that this burden became so unmanageable as to force Hansen Reynolds to withdraw as counsel for Blazer in the one remaining lawsuit, the outstanding amount of Blazer's unpaid payment obligations to the firm was $230,362.16, exclusive of interest, which was provided for under the parties' agreement.

6.     In the meantime, Hansen Reynolds had prevailed on Blazer's behalf in an appeal of summary judgment in one of the lawsuits, which led to a 7-figure settlement in Blazer's favor.

7.     In the other case, Hansen Reynolds had developed evidence and a strategy that placed Blazer in a strong position to prevail at trial or, failing that, on appeal.

## PARTIES

8.     Hansen Reynolds is a limited liability company organized and existing under the laws of the State of Wisconsin. Hansen Reynolds has a principal place of business located at 301 North Broadway, Suite 400, Milwaukee, Wisconsin 53202.

2

9.     All of the members of Hansen Reynolds are citizens and residents of the State of Wisconsin.

10.    On information and belief, Blazer is an individual citizen and resident of the State of Alabama, having a principal residence at 230 County Road 880, Heflin, Alabama 36264.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over the subject matter of Hansen Reynolds claim against Blazer in this case pursuant to 28 U.S.C. § 1332(a) because Hansen Reynolds and Blazer are citizens of different States and the amount in controversy exceeds $75,000, exclusive of costs and interest.

12.    This Court has specific and general personal jurisdiction over Blazer pursuant to due process and the Wisconsin Long Arm Statute, Wis. Stat. § 801.05, because (1) Blazer is engaged in substantial and not isolated activities within this State; (2) Blazer has caused an injury upon a person within this State arising out of an action by Blazer within this State; and (3) property in this State paid, in the past and in the future, to Blazer pursuant to a separate agreement entered into by Blazer and citizens of the State of Wisconsin, that is subject to, construed, and enforced under Wisconsin law.

13.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b). Blazer previously availed himself of this venue when he filed a patent infringement lawsuit in the U.S. District Court for the Eastern District of Wisconsin, Milwaukee Division, in Civil Action No. 2: 20-cv-00480-BHL, and specifically consented to the jurisdiction and to this venue for any disputes arising from the settlement of that lawsuit, which settlement provides property that is at issue in this lawsuit.

3

# BACKGROUND FACTS

## A.    The Alabama Lawsuit Against Blazer

14.    On or about June 3, 2019, Blazer was sued in the U.S. District Court for the Northern District of Alabama in Civil Action No. 1:19-cv-00848-CLM ("the Alabama Lawsuit") by Davis Products Creation and Consulting ("DPCC"), who asserted claims against Blazer for (a) tortious interference with business and contractual relations; (b) violations of Alabama Code §§ 8-12A-1, *et seq,*, for alleged fraudulent assertion of patents; (c) infringement of certain patents owned by DPCC; and (d) declaratory judgment that DPCC had absolute intervening rights to sell its remaining inventory of certain products. (*See* Alabama Lawsuit, Dkt. Nos. 1 and 5.)

15.    Blazer engaged the law firm of Garteiser Honea P.C. ("GH") to represent him in his defense of DPCC's claims in the Alabama Lawsuit, as well as to prosecute counterclaims against DPCC for infringement of Blazer's U.S. Patent No. RE46,421 ("the '421 Patent") and for declaratory judgment that DPCC's patents were not infringed and/or were invalid.

## B.    The Wisconsin Lawsuit

16.    On March 25, 2020, while the Alabama Lawsuit was still going on, Blazer filed a complaint for infringement of his '421 Patent in the U.S. District Court for the Eastern District of Wisconsin against a former licensee, Best Bee Brothers, LLC, and RSP, Inc., in Civil Action No. 2:20-cv-00480-BHL ("the Wisconsin Lawsuit"), thereby availing himself of this venue.

17.    Blazer was represented by GH in the Wisconsin Lawsuit.

18.    Prior to the commencement of discovery in the Wisconsin Lawsuit, the defendants filed a motion for summary judgment on June 18, 2020, arguing that their accused products did not infringe the '421 Patent as a matter of law.

4

**C.    Blazer's Prior Counsel Withdraws from the Alabama and Wisconsin Lawsuits**

19.    On February 18, 2020, GH moved the court in the Alabama Lawsuit for leave to withdraw as counsel for Blazer in that case. (*See* Alabama Lawsuit, Dkt. 36.) In support of that motion, GH explained that, despite almost daily attempts for over one month to reach Blazer via telephone and text messaging regarding impending deadlines in the case and issues over unpaid legal fees, Blazer had not responded to GH. Furthermore, during that same period, GH had learned that Blazer had been attempting to communicate directly with opposing counsel in the case about legal issues and to request copies of documents. According to GH, Blazer's unwillingness to speak with his attorneys and his direct communications with opposing counsel by which he effectively was behaving as a *pro se* party had made GH's continued representation of Blazer unreasonably difficult and untenable. Accordingly, GH moved to withdraw as counsel for Blazer in the Alabama Lawsuit. (*Id.*)

20.    On February 24, 2020, GH notified the court in the Alabama Lawsuit that, after GH filed its motion to withdraw as counsel, Blazer had contacted GH and, after conferring, GH and Blazer had reached agreement regarding the former's continued representation of Blazer. Based on that agreement, GH withdrew its motion to withdraw as counsel. (*See* Alabama Lawsuit, Dkt. 38.)

21.    This arrangement, however, proved to be somewhat short-lived because, on March 2, 2021, GH once again moved to withdraw as Blazer's counsel in the Alabama Lawsuit. (*See* Alabama Lawsuit, Dkt. 74.)

22.    In support of its motion to withdraw as Blazer's counsel in the Alabama Lawsuit, GH argued that Blazer's conduct implicated at least three provisions of the Alabama Rules of Professional Conduct that collectively required that GH's representation should be terminated.

5

(*See id.* at 1.) First, GH asserted that Blazer "insist[ed] upon pursuing an objective that the lawyer consider[ed] repugnant or imprudent," implicating Rule 1.16(b)(3) of the Alabama Rules of Professional Conduct. (*Id.* at 2.) In addition, GH stated that Blazer had failed to fulfill an obligation to that law firm in connection with its provision of legal services—specifically, Blaze had not paid GH for legal services rendered—and had "been given reasonable warning that [GH would] withdraw unless the obligation was fulfilled," as required by Rule 1.16(b)(4). (*Id.*) And finally, GH stated that continuing the representation of Blazer in the Alabama Lawsuit would "result in an unreasonable financial burden" to the firm and attorneys representing him, implication Rule 1.16(b)(5). (*Id.*)

23.    On information and belief, Blazer did not oppose GH's motion to withdraw.

24.    The court in the Alabama Lawsuit conducted a telephone conference with GH, Blazer, and counsel for DPCC on March 10, 2021, to discuss GH's motion to withdraw. (*See* Alabama Lawsuit, Dkt. 75.) And on March 16, 2021, that court entered an order granting GH's motion to withdraw and stayed certain deadlines for discovery to allow Blazer time to engage new counsel, if possible. (*See* Alabama Lawsuit, Dkt. 76.)

25.    Meanwhile, in the Wisconsin Lawsuit, after the defendants' motion for summary judgment of non-infringement was fully briefed but not yet decided by the court, GH also moved to withdraw as counsel for Blazer in that case on April 14, 2021. (*See* Wisconsin Lawsuit, Dkt. 31.)

26.    In support of that motion to withdraw, GH cited the circumstances supporting its withdrawal as counsel in the Alabama Lawsuit and advised that the court in that case had granted GH's motion to withdraw. GH explained in its motion to the Wisconsin court that the same reasons that supported its withdrawal in the Alabama Lawsuit applied in the Wisconsin Lawsuit. Because

6

all deadlines and activities in the Wisconsin Lawsuit had been stayed by that court pending its decision on the defendants' motion for summary judgment, GH argued that Blazer would not be prejudiced by the withdrawal of GH because he would have sufficient time to hire new counsel if he so desired. (*See id.*)

27.     On information and belief, Blazer did not oppose GH's motion to withdraw as counsel in the Wisconsin Lawsuit.

28.     On June 29, 2021, the court in the Wisconsin Lawsuit entered a text order granting GH's motion to withdraw as counsel for Blazer in that case. (Wisconsin Lawsuit, Dkt. 32.)

**D.     Blazer Hires Hansen Reynolds to Represent Him in the Alabama and Wisconsin Lawsuits.**

29.     On or about June 3, 2021, Blazer first contacted Hansen Reynolds to inquire as to whether the firm would represent him in the Alabama and Wisconsin Lawsuits. Over the course of several telephone conversations in June 2021, Blazer provided his impression of the status of those lawsuits.

30.     According to Blazer, he terminated GH because he was dissatisfied with the firm's handling of the Alabama Lawsuit. Among other things, Blazer complained that he had not been informed about the claim construction hearing in that case and had not been allowed to attend that hearing and testify to the court about the construction of certain disputed claim terms. Blazer also complained about GH's handling of DPCC's motion for partial summary judgment regarding its alleged entitlement to absolute intervening rights to sell certain products.

31.     Blazer expressed the opinion that GH's conduct seemed to suggest that the firm had colluded with DPCC and its counsel against Blazer.

32. The discussions in June 2021 between Blazer and Hansen Reynolds also addressed the terms of Hansen Reynolds' possible representation of Blazer in the two pending lawsuits. Blazer inquired whether Hansen Reynolds was willing and able to represent him on a purely contingency basis. Hansen Reynolds explained that it could not do so, in part because a substantial portion of the work in the Alabama Lawsuit would be directed to defending Blazer against DPCC's claims, and thus, there would be no recovery sufficient to offset the time worked by the Hansen Reynolds attorneys on that matter.

33. However, in an effort to alleviate the potentially substantial financial burden on Blazer arising from those lawsuits, Hansen Reynolds proposed that the attorneys working on the Alabama and Wisconsin Lawsuits would bill their time at significantly discounted rates. In exchange for this concession, the firm proposed that, if Blazer recovered a monetary award in either or both of those lawsuits, he would pay a success bonus to Hansen Reynolds in the amount of $200 per hour of attorney time billed in the lawsuit for which the monetary award was recovered. Blazer agreed to these terms and, on June 18, 2021, Hansen Reynolds sent Blazer an engagement letter incorporating all of the terms of the representation in the Alabama and Wisconsin Lawsuits. Blazer executed this letter agreement and returned a signed copy to Hansen Reynolds on June 26, 2021 ("the Engagement Agreement"). A true and correct copy of the executed Engagement Agreement is attached hereto as **Exhibit A**.

34. Among other terms, the Engagement Agreement expressly required that Blazer must pay all fees within 30 days after receiving a monthly invoice from Hansen Raynolds. (*See* **Exhibit A** at 1). For any unpaid balances owed more than 30 days after they were due, Hansen Reynolds specifically reserved the right to charge interest on the overdue balance at a rate of 1 percent monthly, or 12 percent annually. *See id.* The Engagement Agreement further stated that

8

any failure by Blazer to pay fees and costs incurred as agreed would be grounds for Hansen Reynolds to terminate the representation and withdraw as counsel for Blazer in the Alabama and Wisconsin Lawsuits. (*See id.*)

35.     Blazer raised no questions or concerns about the terms of the Engagement Agreement at the time he executed it or at any time thereafter.

36.     Hansen Reynolds proceeded immediately to represent Blazer in the Alabama Lawsuit, participating in a telephone hearing with the court there, responding to several outstanding discovery issues, and moving to dismiss new claims that had been asserted against Blazer by DPCC.

37.     Throughout the duration of their representation of Blazer, Hansen Reynolds attorneys communicated regularly with him about the lawsuits, issues, and strategy, as well as to answer any questions Blazer had and to discuss his ideas and suggestions. These communications were most often in the form of telephone calls—generally multiple calls each month—as well as text messages and emails. During all of these communications, Blazer expressed his gratitude for the work that Hansen Reynolds performed and he always agreed with the proposed strategies for proceeding in the lawsuits. Blazer never suggested that he was not fully satisfied with Hansen Reynolds representation or that there was anything that he believed that the law firm should be doing on his behalf but was not.

38.     Hansen Reynolds issued two invoices to Blazer each month throughout its representation of him, one invoice each for the Alabama and Wisconsin Lawsuits. When these invoices were sent to Blazer by the firm's office manager, he always invited Blazer to address any questions about the invoices to one of the attorneys working on the matters. Despite these invitations to raise questions and/or request information about the invoices, and despite the fact

9

that Blazer was regularly speaking with the attorneys working on the lawsuits, Blazer never questioned any of the invoices, nor did he ever suggest that the work detailed on each invoice was unnecessary or inappropriate or that the firm should be performing other work in connection with either lawsuit.

39.     Blazer made periodic payments in response to the invoices but fell behind in his payment obligations to Hansen Reynolds, particularly in connection with the Alabama Lawsuit where most of Hansen Reynolds' attorneys' work was focused at the start of the representation.

40.     As Blazer fell farther and farther behind in meeting his payment obligations to Hansen Reynolds under the Engagement Agreement, the subject of Blazer's unpaid balance was also discussed during the regular telephone calls about the lawsuits. The Hansen Reynolds attorney on these calls advised Blazer on several occasions that, unless Blazer was able to pay the growing obligation, Hansen Reynolds would have no choice but to terminate the engagement and withdraw as his counsel in both matters.

41.     Despite the fact that the Engagement Agreement expressly provided that Hansen Reynolds could charge interest on overdue amounts owed by Blazer, Hansen Reynolds did not initially invoke that right in an effort to try to keep Blazer's unpaid balance as low as possible.

42.     In addition, despite Blazer's failure to meet his payment obligations under the Engagement Agreement, and despite the fact that the attorneys working on Blazer's matters were not being fully compensated for their time spent on them, Hansen Reynolds did not immediately seek to terminate the representation and withdraw from the lawsuits and the attorneys continued to work to the best of their abilities on Blazer's behalf.

10

### E.    Blazer's Appeal

43.    On October 5, 2021, approximately three months after Hansen Reynolds first appeared as counsel for Blazer in the Wisconsin Lawsuit, the court in that case entered its decision and order granting the defendants' motion for summary judgment of non-infringement and entered judgment in favor of the defendants. (Wisconsin Lawsuit, Dkt. 34 and 35.)

44.    Because Blazer and his attorneys at Hansen Reynolds believed that the court's ruling in the Wisconsin Lawsuit was premised upon an erroneous construction of the single disputed term recited by the claims of the '421 Patent, they immediately filed a notice of appeal of that summary judgment to the U.S. Court of Appeals for the Federal Circuit on October 7, 2021. (Wisconsin Lawsuit, Dkt. 36.)

45.    The defendants in the Wisconsin Lawsuit moved that court for an award of their attorneys' fees on October 19, 2021, and Blazer, through his Hansen Reynolds attorneys, opposed that motion. (Wisconsin Lawsuit, Dkt. 42, 43, and 45.) On January 24, 2022, the court in the Wisconsin Lawsuit agreed with Hansen Reynolds' arguments and entered an order denying the defendants' motion for fees. (Wisconsin Lawsuit, Dkt. 47.)

46.    Blazer's appeal to the Federal Circuit in Appeal No. 2022-1033 proceeded thereafter. The appeal was fully briefed and the Federal Circuit conducted oral argument on November 2, 2022. (Appeal No. 2022-1033, Dkt. 41.) Two weeks after the oral argument, on November 16, 2022, the Federal Circuit issued its opinion and entered judgment vacating the district court's ruling and remanding the case for further proceedings. (*Id.*, Dkt. 42 and 43.)

47.    Blazer acknowledged that the ruling by the Federal Circuit was a significant victory and expressed his gratitude to the Hansen Reynolds attorneys who had secured it on his behalf. Not only had the Federal Circuit reinstated his patent infringement claims against the defendants

in the Wisconsin Lawsuit, it had also largely adopted the construction advocated for by Hansen Reynolds on Blazer's behalf for the disputed term of the '421 Patent claims.

**F.     The Effect of Blazer's Appeal on the Alabama Lawsuit.**

48.     The claim construction entered by the Federal Circuit in Blazer's appeal of the Wisconsin Lawsuit also affected proceedings in the Alabama Lawsuit. The Alabama court had previously construed a number of disputed patent claim terms from each of the several patents at issue in the Alabama Lawsuit, including the term of the '421 Patent construed by the Federal Circuit in Blazer's appeal.

49.     In light of the Federal Circuit's claim construction, which was binding on the court and parties in the Alabama Lawsuit, the court there ordered the parties to refile their summary judgment motions and briefs to accommodate the correct construction of the term of the '421 Patent.

50.     At this same time, Blazer raised a question to the Hansen Reynolds attorneys working on the Alabama Lawsuit about whether, in light of the Federal Circuit's construction of one of the disputed terms of the '421 Patent, he could assert that patent against another product being sold by DPCC on Amazon.com. Blazer involved his brother, a co-inventor of the '421 Patent, in these discussions, and Blazer and his brother disagreed strongly with the opinion of the Hansen Reynolds attorney.

51.     After a series of discussions about this issue in November and December 2022, Hansen Reynolds advised Blazer and his brother that, if Blazer chose to proceed with his claim that the new DPCC product infringed the '421 Patent, Blazer should wait until after the conclusion of the Alabama Lawsuit before asserting that claim. The Hansen Reynolds attorney made this recommendation because waiting would not affect Blazer's ability to seek damages for past sales

of the allegedly infringing products, and because DPCC might attempt to use assertion of his new infringement claim while the Alabama Lawsuit was still pending to somehow support its Alabama state law claims in the Alabama Lawsuit.

52.     Hansen Reynolds learned from DPCC's counsel later in December 2022 that, notwithstanding its advice to Blazer, Blazer had notified Amazon.com of his assertion that the new DPCC product being sold on that platform infringed his '421 Patent, and, based on Blazer's infringement claim, Amazon.com removed the DPCC product from its platform.

53.     On the basis of Blazer's assertion of infringement and Amazon.com's decision to remove the DPCC product, the entity selling the new DPCC product on Amazon.com—which, on information and belief, is affiliated with DPCC—filed a new lawsuit in the U.S. District Court for the Northern District of Alabama against Blazer, asserting, *inter alia*, claims for tortious interference with business and contractual relations and for violations of Alabama Code §§ 8-12A-1, *et seq,*, for alleged fraudulent assertion of patents, similar to those claims asserted by DPCC against Blazer in the Alabama Lawsuit. The plaintiff in this new lawsuit also indicated its intention to seek a preliminary injunction against Blazer.

54.     Hansen Reynolds informed Blazer of this new lawsuit and that, in light of (a) Blazer's failure to comply with his obligations under the previous Engagement Agreement for the original Alabama Lawsuit and the Wisconsin Lawsuit; (b) the significant past-due amount owed by Blazer to Hansen Reynolds; (c) the previously-explained difference of opinion between Blazer and Hansen Reynolds regarding the question of infringement of the '421 Patent by the new DPCC product; and (d) the fact that the Engagement Agreement was specifically limited to Hansen Reynolds' representation of Blazer in the original Alabama Lawsuit and the Wisconsin Lawsuit, Hansen Reynolds could not represent Blazer in this new lawsuit.

55.     Hansen Reynolds continued, though, to represent Blazer in the original Alabama Lawsuit, revising and filing Blazer's motion for summary judgment of all claims in that lawsuit, as well as the briefs in support of Blazer's motion and in opposition to DPCC's cross-motion for summary judgment. Those pleadings were prepared and filed in January, February, and March 2023.

**G.      Settlement of the Wisconsin Lawsuit.**

56.     In light of the Federal Circuit's judgment and claim construction in Blazer's appeal of the Wisconsin Lawsuit, Hansen Reynolds discussed with Blazer whether he would consider the possibility of settling that lawsuit.

57.     Among other reasons to pursue settlement, Hansen Reynolds explained to Blazer that his position in that case after the decision of the Federal Circuit on his appeal was very strong insofar as it effectively eliminated the defendants' only argument to this point that its accused products did not infringe Blazer's '421 Patent. Settlement at this time would potentially allow Blazer to recover damages from the defendants for their past infringement without incurring further significant fees and costs in litigation. Furthermore, any such recovery from the defendants in the Wisconsin Lawsuit might enable Blazer to pay his outstanding balance owed to Hansen Reynolds under the Engagement Agreement so that the firm might be able to continue to represent him in the Alabama Lawsuit.

58.     Blazer agreed to participate in settlement discussions with the defendants in the Wisconsin Lawsuit.

59.     With Blazer's permission, then, Hansen Reynolds contacted counsel for the defendants to inquire as to whether the defendants might be open to discussing the possibility of settlement of the Wisconsin Lawsuit.

14

60.     The defendants agreed with Blazer that it was a good idea to discuss a possible settlement of the Wisconsin Lawsuit before starting to litigate that case again. The parties jointly communicated their intention to the Wisconsin court, who agreed to stay proceedings in that case until the parties had exhausted the possibility of settlement.

61.     The parties to the Wisconsin Lawsuit entered into informal settlement discussions in December 2022, continuing into January 2023. As it became clear that these discussions would not be successful, the parties agreed to mediation before a magistrate judge of the U.S. District Court for the Eastern District of Wisconsin.

62.     The mediation in the Wisconsin Lawsuit was conducted in February 2023, and at its conclusion, the parties had agreed to terms of a settlement that included payments by the defendants to compensate Blazer for alleged past infringement. These payments comprised a single lump sum payment approximately concurrent with the execution of the settlement agreement, followed by a series of annual payments for five years to be made every year on or before May 15, commencing on May 15, 2023, and ending on May 15, 2027. In addition, Blazer also agreed to allow the defendants to sell their remaining stock of allegedly infringing products, and the defendants agreed to pay Blazer a royalty for those sales.

63.     At the time of the settlement, Blazer owed Hansen Reynolds $204,467.57 for its work in the Wisconsin Lawsuit and $275,894.59 for the Alabama Lawsuit.

64.     Blazer agreed that the first lump sum payment and each subsequent annual payment under the settlement agreement would be paid directly to Hansen Reynolds until Blazer's payment obligation under the Engagement Agreement was fully satisfied. To this end, the settlement agreement in the Wisconsin Lawsuit specified that the initial lump sum and all annual payments were to be made via wire transfer to Hansen Reynolds' trust account. Once Blazer's outstanding

15

payment obligation to the firm was satisfied, Hansen Reynolds agreed that it would pay all remaining amounts from the annual payments to Blazer. Meanwhile, the royalty payments for the Wisconsin defendants' sale of their remaining stock of accused products were paid directly to Blazer. On information and belief, these total royalty payments have resulted in a significant revenue stream to Blazer.

65. All of the parties to the Wisconsin Lawsuit settlement agreement also agreed that any communication or notice in connection with the settlement agreement must be made in writing and delivered to each party and their counsel designated in the agreement via overnight courier, email, or certified mail. Among the other recipients identified for all such communications, the settlement agreement expressly stated that Jeremy Adelson, one of the Hansen Reynolds attorneys working on the Wisconsin Lawsuit, was to receive a copy of those communications.

66. The parties to the settlement agreement further specified that the agreement was to be governed by, construed, and enforced in accordance with the laws of the State of Wisconsin, and that any dispute arising under or in connection with the settlement agreement was to be resolved by the federal district court located in Milwaukee, Wisconsin. In the event of any such action, the parties—including Blazer—agreed to waive any objection to this Court's personal jurisdiction and to this venue, and agreed that none of them would assert any defense based on lack of jurisdiction, improper venue, or forum *non conveniens*.

67. The settlement agreement between Blazer and the defendants in the Wisconsin Lawsuit was finalized and executed on or about April 18, 2023.

68. In accordance with the terms of the settlement agreement, the Wisconsin defendants made a lump sum payment on or about April 20, 2023 and a first annual installment payment to Hansen Reynolds on or about May 10, 2023. And in accordance with Blazer's agreement with

16

Hansen Reynolds, these payments were applied to Blazer's outstanding and long-overdue payment obligations under the Engagement Agreement.

69.    After the settlement payments were applied to the outstanding balances owed by Blazer to Hansen Reynolds, the balance owed for the Wisconsin Lawsuit was reduced to $0. However, the balance still owed by Blazer to Hansen Reynolds for the Alabama Lawsuit was $230,362.16, not including interest as provided for under the Engagement Agreement.

**H.    Hansen Reynolds' Termination of Representation**

70.    Throughout the course of its representation of Blazer in the Alabama Lawsuit, Hansen Reynolds attorneys communicated regularly with Blazer about his failure to pay for the legal services provided in breach of the terms of the Engagement Agreement to which he agreed.

71.    On May 31, 2023, Hansen Reynolds filed a motion with the Alabama court requesting that the firm be allowed to withdraw from continued representation of Blazer. (*See* Alabama Lawsuit, Dkt. 185.)

72.    In support of that motion, Hansen Reynolds informed the court that Blazer had failed to comply with the terms of the parties' Engagement Agreement and that continuing the representation under these circumstances would further aggravate the already severe and unreasonable financial burden that Blazer's breach had imposed on the firm and its individual attorneys.

73.    Despite the fact that Blazer had breached his payment obligations under the Engagement Agreement and that the Agreement expressly provided that Hansen Reynolds may terminate its representation of Blazer as a consequence of such a breach, Blazer opposed Hansen Reynolds' withdrawal as counsel in the Alabama Lawsuit.

74. Blazer first communicated his opposition to Steven Brom, Hansen Reynolds' co-counsel in the Alabama Lawsuit. Mr. Brom arranged a telephone call among himself, Blazer, and one of the Hansen Reynolds attorneys. During that call, Blazer expressed that he had been very satisfied with Hansen Reynolds' representation of him in the Alabama Lawsuit, and that he desired that Hansen Reynolds continue to represent him in that case. The Hansen Reynolds attorney explained to Blazer that, as he had been warned over the course of the representation, his failure to meet his payment obligations under the Engagement Agreement by paying all outstanding amounts owed to the firm within thirty (30) days of receipt of Hansen Reynolds' invoices was creating financial hardships for the attorneys representing him and was a basis under the Engagement Agreement for the firm to withdraw as his counsel in the Alabama Lawsuit.

75. The Hansen Reynolds attorney further explained to Blazer that the firm could not continue to represent Blazer through the trial on the Alabama Lawsuit because the fees and costs associated with that trial would further add to the long-overdue outstanding balance owed by Blazer and would result in a further unreasonable financial burden on Hansen Reynolds and directly on the attorneys who would be forced to represent Blazer at trial.

76. Pursuant to the terms of the Engagement Agreement and under Alabama law, Hansen Reynolds' withdrawal as counsel for Blazer at that time was justified and appropriate.

77. Blazer further communicated to the court in the Alabama Lawsuit that he opposed the motion by Hansen Reynolds to withdraw as his counsel in that case and that he wanted the firm to continue to represent him.

78. In the meantime, the court in the Alabama Lawsuit entered an order on the parties' cross-motions for summary judgment on July 5, 2023, granting-in-part and denying-in-part

Blazer's motion for summary judgment, and denying DPCC's motion for partial summary judgment.

79.     With regard to Hansen Reynolds' pending motion to withdraw as Blazer's counsel, the Alabama court conducted a telephone conference on July 14, 2023, with Blazer, the Hansen Reynolds attorneys who had represented him in the Alabama Lawsuit, Mr. Brom, and counsel for DPCC. During that conference, Blazer was very complimentary of the Hansen Reynolds attorneys and the work they performed on his behalf, and he expressed that he did not want Hansen Reynolds to terminate the engagement. Blazer further explained to the Alabama court his agreement with Hansen Reynolds that the firm would be paid all amounts that he owed in connection with its representation of him in the Alabama Lawsuit from the proceeds of the settlement of the Wisconsin Lawsuit, which would be paid to Hansen Reynolds each year of the next four years on May 15.

80.     The Hansen Reynolds attorneys explained to the Alabama court the nature of the severe and unreasonable financial burden imposed by Blazer's failure to comply with his payment obligations under the Engagement Agreement.

81.     On July 17, 2023, the court in the Alabama Lawsuit entered an order granting Hansen Reynolds' motion to withdraw as counsel for Blazer. (Alabama Lawsuit, Dkt. 191.)

82.     After the Alabama court granted Hansen Reynolds' motion, the attorneys working for Blazer on the Alabama Lawsuit continued to try to assist Blazer and his new counsel, Mr. Brom and Joseph Gleason, in their preparations for trial. In addition to conferring with Blazer and his attorneys about issues in the case, and strategy and decisions undertaken during the Alabama Lawsuit, the Hansen Reynolds attorneys reviewed documents prepared for filing by Blazer's counsel.

19

83.     Further, Hansen Reynolds volunteered that Jeremy Adelson, who had personally observed evidence that directly refuted DPCC's claims for relief under the Alabama false claims statute, would be made available to testify for Blazer as a witness at trial, if Blazer so desired, provided Blazer agreed to pay for Mr. Adelson's expenses and time to travel to Alabama and testify at trial.

84.     Blazer and his counsel ultimately did not request that Mr. Adelson testify as a witness at trial despite the importance of the evidence he would have been able to present.

85.     After the verdict at trial, Blazer contacted one of the Hansen Reynolds attorneys seeking information and advice. For example, on October 2 and 3, 2023, Blazer contacted the Hansen Reynolds attorney asking to have a telephone call to discuss the trial and verdict. The attorney asked to schedule that call on October 4 or 5, to which Blazer responded that he had "plenty of time to talk anytime," and stated that he knew the Hansen Reynolds attorney to be "the smartest person on this stuff."

86.     In subsequent telephone conversations, Blazer sought the advice of the Hansen Reynolds attorney about the strategy for proceeding with the case, including the timing of post-trial briefing and possible appeals. Despite having competent counsel who represented Blazer at trial, he specifically sought this guidance from Hansen Reynolds.

87.     The communications from Blazer and requests for advice continued. As recently as February 11, 2024, Blazer contacted one of the Hansen Reynolds attorneys with questions regarding DPCC, the plaintiff in the Alabama Lawsuit, as further actions Blazer might take against DPCC and others based on Blazer's perceptions that the DPCC products were "illegally manufactured," "falsely marked," and "illegally imported through falsified customs documents."

88.     In response, the Hansen Reynolds attorney provided general information about the sorts of claims Blazer described but suggested that Blazer speak with the attorneys representing him in the Alabama Lawsuit to determine the best strategy and course of action in light of the state of that lawsuit.

89.     Blazer sought information and advice from Hansen Reynolds despite the firm's termination of its representation and despite the fact that Blazer continued to owe a significant unpaid balance under the Engagement Agreement for attorneys' fees incurred during the firm's representation in the Alabama Lawsuit.

90.     The Hansen Reynolds attorneys consistently responded to Blazer's requests and inquiries, and discussed issues with his counsel at no charge in the sincere interest in assisting Blazer.

91.     Hansen Reynolds continued to expect that Blazer would satisfy his outstanding payment obligations under the Engagement Agreement from the proceeds of the settlement of the Wisconsin Lawsuit. The firm continued to rely on Blazer's agreement with Hansen Reynolds at the time of that settlement that the annual installment payments made by the defendants in the Wisconsin Lawsuit pursuant to their settlement agreement with Blazer would be paid directly to Hansen Reynolds in satisfaction of Blazer's payment obligations under the Engagement Agreement.

92.     However, on May 15, 2024—the date on which the second installment payment by the defendants in the Wisconsin Lawsuit was due to be paid to Hansen Reynolds in accordance with the terms of the settlement agreement—Hansen Reynolds did not receive any payment from the defendants.

93.     Hansen Reynolds contacted counsel for the Wisconsin defendants to find out the status of that payment but was advised that the attorney was at trial in another matter and would not be able to respond to the inquiry until he returned from trial.

94.     In the meantime, one of the Hansen Reynolds attorneys who had worked on Blazer's matters contacted Blazer by text to let him know that the defendants had failed to make the second installment payment as required by the settlement agreement. He advised Blazer that, in light of the apparent non-payment by the defendants, the firm would, with Blazer's authorization, move to enforce the settlement of the Wisconsin Lawsuit.

95.     In response, Blazer informed Hansen Reynolds that the defendants had made the 2024 installment payment early—sometime "last year," so presumably sometime in 2023—albeit with "a 40,000 discount to pay early." Blazer suggested that it had been necessary to get this discounted early payment from the Wisconsin defendants to pay the attorneys who had represented him at trial in the Alabama Lawsuit.

96.     However, on information and belief, this explanation was not true and Blazer owes a significant unpaid balance for attorneys' fees to the attorneys who represented him at trial in the Alabama Lawsuit.

97.     On information and belief, in or around November 2023, Blazer engaged a Wisconsin attorney, John Osmanski, to renegotiate his settlement agreement with the defendants in the Wisconsin Lawsuit.

98.     On information and belief, this renegotiation included diverting the second installment to be paid by the defendants from Hansen Reynolds to Blazer directly on an expedited schedule and for a discounted amount.

22

99.    In breach of the terms of the settlement agreement, none of the parties provided a copy of their communications regarding this renegotiation to Jeremy Adelson of Hansen Reynolds.

100.    Prior to discovering Blazer's duplicitous conduct with regard to the settlement in the Wisconsin Lawsuit and his specific agreement with Hansen Reynolds that the proceeds of that settlement would be used to satisfy his long overdue and unpaid payment obligation to the firm, Hansen Reynolds had elected to simply wait for the installment payments under the settlement agreement.

101.    After learning of Blazer's breach of his agreement with Hansen Reynolds in connection with the settlement, Hansen Reynolds issued an updated invoice to Blazer on May 28, 2024, for the full amount of the outstanding balance owed by him to the firm, this time including interest as provided for under the parties' Engagement Agreement. As reflected by that invoice, the amount owed by Blazer as of May 28, 2024, was $273,980.61, which includes the unpaid fees and costs incurred by Blazer in the Alabama Lawsuit plus interest as provided for under the parties' Engagement Agreement. Although no further fees and costs will be added to the amount owed by Blazer, interest will continue to accrue at the rate of 1 percent per month, as specified by the Engagement Agreement, until Blazer pays the outstanding balance.

102.    In response to this invoice, Blazer sent an email on May 31, 2024, to the office manager of Hansen Reynolds, replete with unwarranted threats and baseless accusations, all of which stand in marked contrast with Blazer's regular complimentary statements regarding the work performed by Hansen Reynolds, his promises to pay the fees and costs he incurred pursuant to the Engagement Agreement, his opposition to Hansen Reynolds' withdrawal, and his communications with and requests of Hansen Reynolds attorneys after their withdrawal for advice and assistance in connection with the Alabama Lawsuit—guidance that Hansen Reynolds provided

23

despite having no obligation to do so in light of Blazer's breach of the Engagement Agreement. Blazer's email of May 31, 2024, culminated with a statement that Hansen Reynolds "will never recieve [*sic*] any more money from [Blazer] . [*sic*] EVER".

103.    Even after Blazer's email of May 31, 2024, including his threats and his promise to never pay the amounts owed under the Engagement Agreement, Blazer, on information and belief, instructed his current attorney in the Alabama Lawsuit to contact one of the Hansen Reynolds attorneys on June 25, 2024, seeking information to assist in preparation for an upcoming mediation of that lawsuit.

104.    In response to this request, the Hansen Reynolds attorney indicated that he could speak with Blazer's new attorney only if Blazer provided written authorization to do so. Blazer sent the Hansen Reynolds attorney a text message later that day confirming that the requesting attorney now represented Blazer and that the Hansen Reynolds attorney could, "of course . . . say anything you want to" him.

105.    The Hansen Reynolds attorney contacted Blazer's new counsel, informing him that Blazer had provided the requested authorization and that Hansen Reynolds would provide any information to assist with the preparations for the mediation as soon as Blazer paid the long-overdue outstanding balance owed to the firm under his Engagement Agreement with Hansen Reynolds. Blazer's new counsel did not respond as of the date of this complaint.

## COUNT I
## Breach of Contract

106.    Plaintiff repeats and realleges Paragraphs 1 through 105, above, as if fully set forth herein.

107. The parties entered into a valid and enforceable contract—the Engagement Agreement (**Exhibit A**)—on or about June 26, 2021, when it was executed by Blazer reflecting his acceptance of all of the terms of that Agreement and his consent to be bound by them.

108. Among the terms of Engagement Agreement relevant to this action, Blazer specifically agreed to pay all amounts owed to Hansen Reynolds within thirty (30) days after his receipt of an invoice. (*See* **Exhibit A** at 1.)

109. Although Blazer made periodic payments to Hansen Reynolds during the course of the representation, he did not comply with his payment obligations under the Engagement Agreement because he failed to pay all outstanding amounts owed within thirty (30) days after he received invoices from the firm, going months sometimes without making any payments.

110. As of the date of this Complaint, the outstanding balance of fees, costs, and interest owed by Blazer to Hansen Reynolds under the terms of the Engagement Agreement is $273,980.61, and Blazer has stated that he will not pay any portion of the amount he owes to Hansen Reynolds.

111. Thus, Blazer is in breach of the Engagement Agreement.

112. Hansen Reynolds performed all of its obligations to Blazer under the Engagement Agreement.

113. As a result of Blazer's breach of the Engagement Agreement, Hansen Reynolds has suffered and will continue to suffer monetary damages in the amount of 273,980.61, which amount will continue to increase as interest at the rate of 1 percent per month—as provided for under the parties' Engagement Agreement—will continue to accrue.

25

114.    On information and belief, Blazer will continue to receive annual installment payments on or about May 15, 2025, May 15, 2026, and May 15, 2027, from the Wisconsin defendants in the Wisconsin Lawsuit, pursuant to the settlement agreement entered into by Blazer and those defendants in the State of Wisconsin, subject to Wisconsin law.

115.    On information and belief, the amount of the remaining installment payments to Blazer pursuant to the agreement to settle the Wisconsin Lawsuit will be sufficient to satisfy Blazer's outstanding payment obligation to Hansen Reynolds under the Engagement Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hansen Reynolds LLC respectfully requests judgment be entered in its favor and against Defendant Brian Blazer, and prays for relief as follows:

A.    That judgment be entered for Hansen Reynolds and against Blazer on Hansen Reynolds' claim that Blazer has breached his contracts with Hansen Reynolds;

B.    Awarding Hansen Reynolds its damages incurred as a result of Blazer's breach of the parties' Engagement Agreement, including pre- and post-judgment interest as allowed by law;

C.    Awarding Hansen Reynolds all such other and further relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff Hansen Reynolds LLC hereby demands that this matter be tried to a jury.

Respectfully submitted,

Dated: July 8, 2024

/s/ *Thomas S. Reynolds II*
Thomas S. Reynolds II
Jeremy Adelson
HANSEN REYNOLDS LLC
301 North Broadway, Suite 400
Milwaukee, Wisconsin 53202
(414) 455-7676
treynolds@hansenreynolds.com
jadelson@hansenreynolds.com

Joseph J. Jacobi
HANSEN REYNOLDS LLC
150 South Wacker Drive, 24th Floor
Chicago, Illinois 60606
(312) 818-5696
jjacobi@hansenreynolds.com

*Attorneys for Hansen Reynolds LLC*